## HAVENS v. WEST SIDE ELECTRIC LIGHT CO. et al.

### (Supreme Court, Special Term, New York County. January, 1892.)

1. MECHANICS' LIENS—BUILDINGS ERECTED BY TENANT WITHOUT OWNER'S CONSENT.
   Where a lessee erects buildings on the land in the absence of express permission in the lease, the owner's failure to dissent, and his assistance in the erection of the building as agent of the tenant, do not constitute consent, within the mechanics' lien act, and no liens for labor or material attach to the land.

2. TRADE FIXTURES—BETWEEN LANDLORD AND TENANT.
   Machinery placed by an electric light company in a building erected by it on leased land does not become part of the realty, and may be removed on execution by a creditor of the company.

Action by James H. Havens against the West Side Electric Light Company and others to enforce a mechanic's lien. Judgment for defendant Striker.

*William Stone,* for plaintiff. *Rudd & Hunt,* for defendants. *Archibald C. Shenstone, Vincent & Wood,* and *Hurd & Grim,* for defendant lienors. *John J. Lenihan,* for receiver. *Bliss & Schley,* for defendant Striker.

TRUAX, J. The defendant Striker was the owner of a certain lot of land. He leased that land to the West Side Electric Light & Power Company. Said company entered into contracts with the plaintiff and the defendant lienors to erect a building on said lot of land. The lease from the defendant Striker to the said company contains no permission or provision giving the right to the said company to erect or construct any building or appliance or to put in machinery on the said land. It is now sought to hold liens on said land, upon the ground that the defendant Striker consented to the construction of the building. I do not see how it can be said that the work was done and the materials were furnished with the consent of Striker. He was not in possession of the premises, and could neither consent nor dissent to the erection of the building. The work was done and the materials were furnished, not with the consent, but without the dissent, of the owner. As far as the lessee of the premises was concerned, the consent or dissent of the lessor was immaterial. The most that can be said is that Mr. Striker acquiesced, and acquiescence is not consent. We give consent when we yield what we have the right or the power to withhold. I cannot find a better exposition of the law on this point than that given by Judge VAN HOESEN at special term, common pleas, in *Ottiwell* v. *Watkins.* This opinion is not reported, but may be found in the printed book used at the general term.[1] It is as follows: "Consent implies a degree of superiority; at least the power of preventing. It implies not merely that the person accedes to, but that he authorizes, an act. Crabb's Synonyms." The case at bar is to be distinguished in several respects from *Otis* v. *Dodd,* 90 N. Y. 336; *Schmalz* v. *Mead,*

[1] For opinion on appeal, see 6 N. Y. Supp. 518.

125 N. Y. 188, 26 N. E. Rep. 251; *Miller* v. *Mead*, 127 N. Y. 544, 28 N. E. Rep. 387. In *Otis* v. *Dodd* the owners of the lands leased them, and the lessees covenanted in the lease to erect certain buildings thereon, which, at the expiration of the lease, should become the property of the owners. Moreover, the owners of the land took an active part in the construction of the building. They took the measurements and designated where the buildings were to be put. They told the builder—the plaintiff—how deep to go for the foundation. They said to him, when he came to ask about the responsibility of his contractor, to go on and do the work, and if he was not paid he could file a lien and secure himself. And on page 57 of the printed case it is said that the building became the property of the owners of the lots, and that the owners, Dodd and Ross, did more than simply consent. In *Schmalz* v. *Mead*, *supra*, the husband of the defendant, as her agent, entered into a written contract with one Kuhn for the sale to said Kuhn of certain lots. In this contract Kuhn contracted to build certain houses on those lots, and the title to the land was not to pass until the completion of the buildings. This contract was assigned to the defendant, who was the owner of the lot. The parties who claim liens performed labor or furnished materials in the erection of the buildings specified in the contract with Kuhn. The court of appeals call attention to the first and fifth sections of chapter 342 of the Laws of 1885, which are as follows: The first section provides that "any person * * * who shall hereafter perform any labor or services, or furnish materials which have been used or which are to be used in the erection, altering, or repairing any house, with the consent of the owner, as hereinafter defined, * * * may have a lien" to the extent of the interest of the owner; while the fifth section provides that "in the cases in which the owner has made an agreement to sell or convey to the contractor or other person, such owner shall be deemed to be the owner within the intent and meaning of this act, until the deed has been actually delivered and recorded."

It is to be noticed that in the case at bar the deed was actually delivered and recorded before the lien had been filed. On these facts it was held that "the defendant's relation to and interest in the land constituted her the owner thereof, within the meaning of the word 'owner,'" as defined in the fifth section of the mechanic's lien laws, (see *Miller* v. *Mead*, 127 N. Y. 548, 28 N. E. Rep. 387;) and, on the authority of *Otis* v. *Dodd*, that, the contract itself providing for the doing of work and the furnishing of materials, the work was done and the materials were furnished with the consent of the owner. *Miller* v. *Mead*, *supra*, is to the same effect as *Schmalz* v. *Mead*. In *Husted* v. *Mathes*, 77 N. Y. 388, the land on which the buildings were erected was the property of a Mrs. Storms, and the improvements were made thereon by her husband, with her knowledge and consent, and for her benefit. In other words, she allowed her husband to improve her property, and received the benefit of the work done and the materials furnished. She ratified the acts of her agent, and therefore those acts became her acts. *Nellis* v. *Bellinger*, 6 Hun, 560, is of like character. *Burkitt* v. *Harper*, 79 N. Y. 273, is like *Otis* v. *Dodd*, *supra*, in respect to the provisions of the lease to erect buildings. Certainly it cannot be that, if the owner in fee of a lot of land makes a contract with a builder to erect a building on that lot of land for a certain sum of money, and pays him that sum of money before any lien has been filed, a subcontractor, or one who has furnished materials to the builder, has the right to file a lien on the property as against the owner of the property. And yet the owner of the property has given his consent to the erection of the building. Chapter 379 of the Laws of 1875 provides that "every person performing labor upon * * * any building shall have a lien on the same for the work done, * * * whether done at the instance of the owner of the building * * * or his agent," and yet it was held in *Cornell* v. *Barney*, 94 N. Y. 394, that the building was

not erected for the owner of the lot, and in no proper sense could it be said that the materials that had been furnished for the building were furnished at his instance, although the person to whom he had let the lot had contracted to erect a building on the lot, which, in certain contingencies, might become the property of the owner of the lot. In *Knapp* v. *Brown*, 45 N. Y. 207, and in *Muldoon* v. *Pitt*, 54 N. Y. 269, the words, "with the directions of the owner or his agent," of chapter 500 of the Laws of 1863, were construed by the court of appeals "to give a lien only in case there was a contract, express or implied, with the owners of the land, for doing the work or furnishing the materials." See *Cornell* v. *Barney*, 94 N. Y. 400. To the same effect, in *Craig* v. *Swinerton*, 8 Hun, 144, construing the words, "with the consent of the owner," in chapter 489 of the Laws of 1873. The view that I have taken is not in conflict with *Ross* v. *Simon*, (Com. Pl. N. Y.) 9 N. Y. Supp. 536, which held that an averment in a complaint that the owner consented to the performance of the labor and the supplying of materials was sufficient on demurrer to the complaint, on the ground that the complaint did not state facts sufficient to constitute a cause of action. "It is not necessary," said the court in that case, "to aver how or under what circumstances the consent of the owner was given. * * * We have not now to deal with the question whether the facts to be proved will bring the case within the authorities." But it is contended that the defendant Striker participated in the erection of the building. His participation, at the most, was but slight, and he participated not as the owner of the lot, but as the agent of the company, lessee of the lot. A man acting as agent for another, and known so to be acting, binds his principal, and not himself individually.

Another question arises upon the claim made by the defendants Hunter and Willis. They have obtained a judgment against the defendant company, and have issued execution thereon, and sold certain machinery belonging to said company. The machinery put upon the premises described in the complaint was at all times the property of the company, could be removed by it, and never became part of the realty. As was said by the general term of this court in *Watts-Campbell Co.* v. *Yuengling*, (Sup.) 3 N. Y. Supp. 869, affirmed 125 N. Y. 1, 25 N. E. Rep. 1060: "It is largely a question of intention whether machinery placed in a building is to be considered as attached to the freehold or not. There are numerous cases where the controversy has arisen between landlord and tenant in which the principle has been laid down that fixtures erected by a tenant in a building for the convenience of his trade may be removed by him at any time during his term; and this conclusion is arrived at upon the principle that they were necessary for the carrying out of his trade, and that, as he was not the owner of the fee, there was no presumption that he intended to make them part thereof. So it was held as early as the case of *Holmes* v. *Tremper*, 20 Johns. 29, that a cider mill and press, erected by a tenant at his own expense, and for his own use, though fixed to the soil, are his own property, and removable by him at the end of the term."

Let the findings, etc., be settled on notice.