(74 App. Div. 400.)

### NEW YORK ELEVATOR SUPPLY & REPAIR CO. v. BREMER et al.

(Supreme Court, Appellate Division, First Department.    July 8, 1902.)

1. MECHANICS' LIENS—CONTRACT WITH TENANT—CONSENT OF OWNER.

Where, in an action to enforce against the owner of a building a mechanic's lien for the installation of an elevator plant under contract with the owner's tenant, it appears that the lease provided the tenant should put in an elevator plant, such improvement to belong to the lessors on the expiration of the lease, and that the lessors knew of plaintiff's contract with the tenant, there is sufficient evidence from which to infer a consent on the part of the owner to make such improvements, and thereby subject the property to a mechanic's lien under the statute.

2. SAME—PARTIAL PERFORMANCE.

Where the plaintiff contracted with the tenants of a building to install an elevator plant, the owner consenting to the improvement, and plaintiff tore out an old elevator, as was necessary to install the new one, but failed to complete the new one, owing to failure of the tenants to make payment on the contract price, the property was not subject to a mechanic's lien for the work done and materials furnished for the new elevator.

Appeal from trial term, New York county

Action by the New York Elevator Supply & Repair Company against S. Parker Bremer and others. From a judgment dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Alexander S. Bacon, for appellant.

Henry W. Hardon, for respondents.

HATCH, J.    This is an action to foreclose a mechanic's lien against the owners of property for services rendered and material furnished at the request of the tenant with the consent of the owners. The defendants, as trustees under a will, are the owners of certain premises in the city of New York, which were leased by them on March 9, 1900, to J. W. Aspell & Co. for a period of five years. The rental for the premises for the first year was the sum of $2,200, for the second year $7,500, and thereafter at a slight increase over the rental of the second year for the remainder of the term. It was agreed by the parties in one of the covenants of the lease that the lessees should put in and complete within three months from the signing of the lease a steam heating and elevator plant at their own expense, the same to belong to the lessors at the completion of the term. The tenant, in fulfillment of this covenant, entered into a contract with the plaintiff to furnish the elevator as called for in their lease. The agreed price of the same was $1,335, one-half of which, by oral agreement, was to be paid for at the time the machine was delivered. The three-months time within which this elevator was to be completed was thereafter extended by the defendants. The plaintiff commenced work thereon about July 20th, and continued until about August 15th, when it ceased

all work upon the elevator, leaving the same uncompleted. To put this new elevator in it was necessary to tear out the old one, so that at the cessation of the plaintiff's work, on August 15th, there was no elevator in the building which could be used. The plaintiff ceased work, not from any interference by the defendants, but for the reason that they had not received any pay from the tenant as agreed, and because it discovered their insolvency, which it appears it had suspected before entering upon the contract. In regard to the insolvency of Aspell & Co., it appears that on July 7, 1900, the sheriff had taken possession of all their property and retained possession of the same until September 22d; that a petition was filed against it on August 9th; that later it was adjudged a bankrupt; and that notice to surrender possession of the premises had been served upon them on August 10th for nonpayment of rent. The amount of work necessary to complete the contract on August 15th was some $370 more than a fourth of the contract price.

The lease in this case having provided that the tenant should put in a steam heating and elevator plant and make other repairs during the term of the lease, at its own cost and expense, such improvements to belong to the lessors upon the expiration of the lease, coupled with the fact that the agent of the lessors had notice of the contract which had been made with the tenant by the plaintiff, is undoubtedly sufficient from which to infer a consent upon the part of the owner to make such improvements, and thereby made the property subject to a mechanic's lien under the terms of the statute providing therefor. Jones v. Menke, 168 N. Y. 61, 60 N. E. 1053; Wall Paper Co. v. Sire, 163 N. Y. 122, 57 N. E. 273; Burkitt v. Harper, 79 N. Y. 273.

If this were the only question presented by this appeal, we should have little difficulty in sustaining the plaintiff's right to a lien. It appears, however, that the plaintiff abandoned its contract, and failed to complete the improvements which it had entered upon for which the lease provided and which the consent of the owner contemplated. The net result of the whole transaction to the owner of the building is this: They have paid for the entire improvement for which the lease made provision in the reduced rental received for the use of the premises. At the commencement of such improvement they had an operating elevator. This was torn out, and the plaintiff has substituted therefor an incomplete elevator, unfinished in every essential particular, and absolutely useless for purposes of operation. To complete the same requires an expenditure of more than a fourth of the contract price. In De Klyn v. Gould, 165 N. Y. 282, 59 N. E. 95, 80 Am. St. Rep. 719, it was held that an owner of property could not be charged for improvements made upon the premises, even though he consented to certain specific changes thereon, where there is a material departure from the specifications to which the owner consented, which largely increased the cost of the improvements. This case was construed in Jones v. Menke, supra, as holding that there would be no liability except for the improvement specified in the contract to which the consent was given. In principle an owner cannot be charged for improvements which are in-

complete, and which fail to comply with the terms and specifications under which they were to be done, and upon the performance of which the consent is based. An owner under such circumstances does not subject himself to a lien upon the building any more than he does where the contract is exceeded and the improvement is made more expensive. If the contractor desires to hold the owner of the building responsible for the work and materials furnished, it is incumbent upon him to substantially comply with the terms of the contract in respect to which the consent is given. The law never contemplated that a contractor could work actual damage to a building, fail to complete his contract, and then charge the owner with liability for something to which he never consented. In principle there is no difference between such a case and a case where the owner has never consented to the making of the improvement. The contractor is bound to take notice of the rights of the owner and the requirements under which he may be charged, and, if the contract to which the owner consents requires a specific thing, substantial compliance must be had therewith or the owner will not be bound. This is an essential element contemplated by the statute, and failure to comply with it furnishes no right to a lien. Of this fact the contractor is bound to take notice. Where he performs work under a contract with the tenant, and also relies upon the consent of the owner, he is not justified in abandoning the work because the tenant refuses to pay or is otherwise guilty of a breach of the contract, unless he be prevented from performing. This works no hardship to the contractor where he relies upon the consent of the owner and the security of the building. He runs no hazard of payment, as the owner is liable, even though the tenant fails in his undertaking. As the owner is held by virtue of having given his consent to the doing of a particular thing, that contract must be substantially performed or the owner may not be held liable. The principle which works such result is too plain to need further elaboration.

It follows that the judgment and order should be affirmed, with costs. All concur.