FRAAD CONTRACTING CO. v. BOYD et al.

(Supreme Court, Appellate Division, First Department.   December 30, 1915.)

MECHANICS' LIENS ☜312—ESTOPPEL BY BOND—NOTICE.

> The owner of premises leased them for a term, by a lease reciting that it was made for the purpose of altering the buildings thereon, and providing that the tenant should expend not less than $5,000 in altering the buildings and should furnish the lessor a bond of the contracting company, guaranteed by a surety company, in the sum of the cost of the alterations, and the plaintiff contracting company, of which the lessee was president, gave a bond in compliance therewith, with a penalty in the sum of $5,000, and the work contemplated by the lease was performed at a cost of $7,000 for labor and materials.  Held, that the plaintiff company, being in effect a party to the lease and knowing of the limitation as to expense, was estopped by its bond from filing or asserting any mechanic's lien against the premises for the excess of expenditure over $5,000 or for any part of the expenditure.

> [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 655; Dec. Dig. ☜312.]

Appeal from Trial Term, New York County.

Action by the Fraad Contracting Company against John J. Boyd, individually and as trustee, etc., and others.  From a judgment in favor of the plaintiff, entered pursuant to a decision of the court, defendants appeal.  Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and SMITH, JJ.

Montague Lessler, of New York City (Eugene F. Moses, of New York City, on the brief), for appellants.

Emanuel Eschwege, of New York City, for respondent.

LAUGHLIN, J.   This is an action to foreclose a mechanic's lien on premises No. 61 West Forty-Sixth street, borough of Manhattan, New York, owned by the appellants.  The premises were leased by the appellants to Emil Fraad for the period of 21 years from the 1st of June, 1913, by an indenture in writing executed on the 14th day of May, 1913.  When the lease was made there was a dwelling house on the premises, and the lease recites that it was made "for the purposes of and with the privilege of changing or altering to apartments, lodgings, and stores, and for the purposes of any legitimate business," with certain exceptions.  The landlords were parties of the first part, and the tenant the party of the second part, to the lease, and with respect to the alterations and improvements the lease contained further provisions as follows:

"And the party of the second part further covenants, for himself, his heirs, executors, administrators, and assigns, that before the 1st day of November, 1914, he or they will expend not less than the sum of five thousand ($5,000) dollars in improving and altering the said building now erected on said premises, and that he will furnish to the parties of the first part, at least ten days prior to the commencement of any alteration or improvement in the buildings now erected upon said demised premises, but at their own cost and expense, however, a bond of Fraad Contracting Company, guaranteed by a surety company satisfactory to the parties of the first part, in the penal sum of the cost

and value of the alterations to be made in the demised premises as aforesaid, by the party of the second part, his heirs, executors, administrators, and assigns, which bond shall be given and accepted before any of said alterations are commenced, and shall provide for the expenditure of not less than five thousand ($5,000) dollars as the cost and value of the alterations herein provided for, and shall provide for the proper completion of said alterations to the satisfaction of the parties of the first part on or before the 1st day of November, 1914. A failure to furnish as aforesaid said bond and guaranty will give the parties of the first part, at their option, the right to declare this lease and agreement forfeited."

The lessee was the president of the plaintiff, which according to the provisions of the lease was to give the bond; and it appears that a bond was given by the plaintiff on the 1st day of July, 1913, which was accepted as a compliance with the requirements of the lease. It will be seen from the provisions of the lease already quoted that the penalty of the bond was to be the *cost and value* of the alterations, which was to be not less than $5,000. The penalty of the bond given was $5,000; but it was not recited therein that the lessee had agreed to furnish a bond executed by the plaintiff and guaranteed by a surety company, guaranteeing that he "will provide for the expenditure of no less than five thousand ($5,000) dollars, as to the cost and value of certain alterations and the completion of said alterations to the satisfaction of the obligees, on or before the 1st day of November, 1914," and the bond was conditioned that the plaintiff should well and truly indemnify and save the appellants harmless from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the lease to be performed on the part of the lessee, and the liability of the surety was limited to the penalty of the bond.

It was stipulated that the work contemplated by the lease was performed by the plaintiff, pursuant to an agreement with the lessee, and that plaintiff "furnished the material and supplied the necessary labor in order to complete the alterations," and expended for "such work, labor, and materials" the sum of $7,000. The trial court held that the plaintiff was estopped by the bond to the extent of $5,000 and directed judgment of foreclosure for $2,000.

The learned counsel for the appellants contends that the plaintiff is estopped from claiming a mechanic's lien for any part of the cost of the improvements, and we agree with that contention. By the express terms of the lease, the bond was to be given by the plaintiff for the entire cost, and although the penalty of the bond is limited to $5,000, it is apparent that it was not intended as a modification of the provisions of the lease, but as a compliance therewith. The plaintiff knew that, while the landlords had authorized the improvements, they had obligated their tenant to make them at his own expense and to give a bond to that effect, and the plaintiff executed the bond to the appellants for that purpose. The landlords required that these improvements be made by the tenant, and therefore their consent appears by the lease; and ordinarily a contractor furnishing labor or material would be entitled to file a lien therefor, and would not be restricted with respect to the amount of his lien by the cost of the improvements as estimated and set forth in the lease (Jones v. Menke, 168 N. Y. 61, 60 N. E. 1053; Wahle, Phillips Co. v. 59th Street & Madison Ave. Co.,

153 App. Div. 17, 138 N. Y. Supp. 13); but in the case at bar the contractor, by executing the bond, in effect became a party to the lease, and the bond it executed was intended to protect the landlords against any claim arising out of the performance of the work. The lien shows that much of the work had been performed by plaintiff before the formal lease was executed, which indicates that it was contemplated that the improvements were to be made by plaintiff. Here the contractor not only knew of the limitation as to the cost of the improvements, which was made definite in amount by the bond and would limit the liability, if any, of the owner (McLean v. Sanford, 26 App. Div. 603–605, 51 N. Y. Supp. 678; Steeves v. Sinclair, 56 App. Div. 448–453, 67 N. Y. Supp. 776; Hankinson v. Van Tine, 152 N. Y. 20, 46 N. E. 292); but the contractor was a party to the limitation agreement. The plaintiff, therefore, was estopped by its bond from filing or asserting any lien as against the appellants.

It follows that the judgment should be reversed, with costs, and any findings inconsistent with these views should be reversed, and findings in accordance therewith made, and the complaint dismissed, with costs. All concur.